# Exhibit A

**After Recording Return To:**
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

**This Document Prepared By:**
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067
Tatiana Vakidis

Parcel ID Number:

Current UPB: $413,186.46
New UPB: $418,682.82
New Money: $5,496.36

Section: _____, Block: _____,
Lot: _____

_____ [Space Above This Line For Recording Data] _____

Loan No.:614592988

Original Loan Amount: $472,500.00
New Money: $5,496.36

# HOME AFFORDABLE MODIFICATION AGREEMENT

This property is or will be improved by a one or two family dwelling only.

Borrower ("I"): **MANUEL PINEDA**, whose mailing address is 3016 BARKLEY AVENUE, BRONX, NY 10465. Dated this _____ day of _____, _____. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
Lender or Servicer ("Lender"): **NATIONSTAR MORTGAGE LLC**, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
_____, ____
Loan Number: 614592988
Property Address ("Property"): 3016 BARKLEY AVENUE
BRONX, NY 10465



*6 1 4 5 9 2 9 8 8 *                                          *1 1 2 7 5 2 + 1 0 *
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14                                                    Form 3157  3/09 (rev. 10/10) (page 1 of 8 pages)

**Legal Description:**

**Prior instrument reference: Book/Liber N/A, of the Official Records of County, NY.**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. The certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof, and the property has not been condemned;
   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a trial period plan.
   H. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14
Form 3157 3/09 (rev. 10/10) (page 2 of 8 pages)

of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **May 1, 2014** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **June 1, 2014**.

   A. The Maturity Date will be: **May 1, 2054**.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $418,682.82 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. Interest at the rate of **4.500%** will begin to accrue on the New Principal Balance as of **May 1, 2014** and the first new monthly payment on the New Principal Balance will be due on **June 1, 2014**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 4.500% | May 01, 2014 | $1,882.24 | $1,299.31 May adjust periodically | $3,181.55 May adjust periodically | June 01, 2014 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14                                                                                  Form 3157 3/09 (rev. 10/10) *(page 3 of 8 pages)*

Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

*6 1 4 5 9 2 9 8 8 *     *1 1 2 7 5 2 + 1 0 *
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14                                                                                           Form 3157  3/09  (rev. 10/16) *(page 4 of 8 pages)*

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14                                                                                      Form 3157  3/09  (rev. 10/10) *(page 5 of 8 pages)*

original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. This Agreement modifies an obligation secured by an existing security instrument recorded in County, NY, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14                                                                                            Form 3157  3/09  (rev. 10/10) (page 6 of 8 pages)

is $413,186.46. The principal balance secured by the existing security instrument as a result of this Agreement is $418,682.82, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**MANUEL PINEDA** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of New York

County of _____

On the \_\_\_ day of _____ in the year _____, before me, the undersigned, personally appeared

_____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature

_____
Office

My commission expires : _____




MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14                                                                                       Form 3157  3/09  (rev. 10/10) (page 7 of 8 pages)

**NATIONSTAR MORTGAGE LLC**

By: _____(Seal) - Lender
Name: _____
Title: _____

_____
Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____
State of _____

County of _____

On the ___ day of _____ in the year _____, before me, the undersigned, personally appeared

_____, the _____ of
_____,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature

_____
Office


*614592988*


*11752+10*

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14                                                                                  Form 3157  3/09  (rev. 10/10) (page 8 of 8 pages)

## AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
(Modification Agreement)

**State of Texas**
**County of Dallas**

I, _____, being duly sworn, deposes and says;

1. That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.
2. A certain mortgage bearing the date of _____, ____, in the principal amount of FOUR HUNDRED SEVENTY TWO THOUSAND FIVE HUNDRED AND NO/100 ($472,500.00) was made by MANUEL PINEDA as Mortgagor to NATIONSTAR MORTGAGE LLC as original Mortgagee, recorded on January 1, 0001, in Book/Liber N/AMortgage tax paid $0.00, in the Dallas County Clerk's Office, upon which the mortgage tax was duly paid thereon.
3. The instrument offered for recording herewith is a Modification made by MANUEL PINEDA to NATIONSTAR MORTGAGE LLC effective May 1, 2014, and to be recorded in the Dallas County Clerk's Office.
4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:

   a) Unpaid principal balance             $413,186.46
   b) New unpaid principal balance         $418,682.82
   c) b minus a equals (New Money)           $5,496.36
   d) Additional obligation secured by mortgage as modified

Additional mortgage recording tax of $ _____ is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.
**NATIONSTAR MORTGAGE LLC**

Name: _____
Title: _____

Sworn to before me this _____ day of _____, 20_____.

Notary Public, State of _____
My Commission Expires: _____


Affidavit Under Section 225 of the New York State Law
2090 11/12


Page 1 of 1

# Acknowledgment Examples

_____ [Space Below This Line For Acknowledgments] _____
State of
County of _____

I certify that I know or have satisfactory evidence that _____
**Insert Borrower Name(s)**
_____.
(name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: _____

_____
Signature of Notary
**Insert "Notary Public" as title**
_____
Title

My Commission expires: _____


_____ [Space Below This Line For Acknowledgments] _____
State of
County of _____

I, **Insert Notary Name** , a **Notary Public** _____ residing in the County and State

certify that **Insert Borrower Name(s)** _____
_____.
who is/are personally known to me, and this day appeared before me and acknowledged that he/she/they signed, sealed and delivered the foregoing Security Deed of his/her/their own free will and accord, for the purposes named and expressed in that instrument.

In witness, I have set my hand and official seal unto this instrument this _____ day of
_____, 20 _____.

_____
Signature **Notary Public**
Title of Officer

My _____ (commission or term of office) expires on _____ [Date].




[Space Below This Line For Acknowledgments]

State of _____ )
County of _____ )

On ___Date_____ before me, ___Notary Name_____ personally appeared
_____Insert Borrower Name(s)_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
NOTARY MUST PRINT OR TYPE
This must be printed or typed in a manner that is photographically reproducible (GC27201.5)
Name of the notary: _____
County of notary's principal place of business: _____
Notary's phone number: _____
Notary's registration number: _____
Commission expiration date: _____

↑

Notary MUST fill in all lines of information




# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, MANUEL PINEDA ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated _____, ____, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to


*614592988*
AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12


*112752+10*
(Page 1 of 2)

Loan No.: 614592988
Borrower: MANUEL PINEDA

Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_____        _____
Borrower - MANUEL PINEDA                    Date

_____        _____
Borrower -                                  Date

_____        _____
Borrower -                                  Date

_____        _____
Borrower -                                  Date


AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12


(Page 2 of 2)